IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.                                        No. CV 13-1152 WJ/LAM
                                              CR 13-192 WJ

GILBERTO CHAIREZ-ZAMORA,

        Defendant/Movant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**[1]

**THIS MATTER** is before the Court on Defendant/Movant's (hereinafter "Defendant") § 2255 motion [*Doc. 1*],[2] filed on December 4, 2013, and Appendix containing exhibits to the motion [*Doc. 14*], filed on February 7, 2014. In his motion, Defendant claims that his trial counsel was ineffective for failing to adequately advise Defendant of the immigration consequences of his guilty plea (*Doc. 1* at 10-25), and that his Fifth Amendment rights have been violated (*id.* at 25-28). Plaintiff/Respondent (hereinafter "the Government") filed a response to the Section 2255 motion on January 30, 2014. [*Doc. 13*]. No reply has been filed and the time for doing so has passed. On December 6, 2013, United States District Judge William P. Johnson referred the claims raised in this case to the undersigned for proposed findings and a recommended

---

[1] **Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

[2] Unless otherwise noted, all referenced documents are from Case No. CIV-13-1152.

disposition, and a hearing, if necessary. [*Doc. 5*]. Having considered the motion, response, relevant law, and the record in this case and in Defendant's underlying criminal case contained in Case No. CR-13-192, the undersigned recommends, for the reasons set forth below, that the claims raised in Defendant's § 2255 motion [*Doc. 1*] be **DENIED**, and that Case No. CIV-13-1152 be **DISMISSED with prejudice**.

The Court finds that an evidentiary hearing is unnecessary because Defendant's motion and the record of this case conclusively show that Defendant is entitled to no relief. The Court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Therefore, no evidentiary hearing will be held.

### Factual and Procedural Background

On January 23, 2013, Defendant entered into a plea agreement with the Government, under which Defendant pled guilty to an Information (*Doc. 31*, filed in CR No. 13-192 WJ) charging Defendant with Transporting Illegal Aliens, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(B)(i), and Aiding and Abetting, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(II). [*Doc. 34* at 2, filed in CR No. 13-192 WJ]. On April 1, 2013, the Court sentenced Defendant to 35 days in prison or time served, whichever is less, with one year of supervised release, unless Defendant is deported, in which case the one-year term of supervised release was to be unsupervised. [*Doc. 50* at 2-3, filed in CR No. 13-192 WJ]. Defendant filed his § 2255 motion on December 4, 2013. [*Doc. 1*].

**Discussion**

In his motion, Defendant makes two claims: (1) that his counsel was ineffective because Defendant was not adequately advised regarding the mandatory deportation consequences of his guilty plea (*Doc. 1* at 10-25); and (2) that his Fifth Amendment rights were violated (*id.* at 25-28). Defendant states that he "would not have waived his right to a jury trial if he had been told by his defense counsel of the 'succinct, clear and explicit' immigration consequences of presumptive deportation," and that he "would have asked his attorney to plea bargain with the government to obtain a conviction and sentence that reduce the likelihood of deportation." *Id.* at 14. Defendant contends that his counsel's failure to properly advise him regarding the immigration consequences of his plea violates the holding in *Padilla v. Kentucky*, 559 U.S. 356 (2010). *Id.* at 6. Specifically, Defendant contends that the boilerplate language in the plea agreement does not satisfy the holding of *Padilla* and violates Defendant's Fifth Amendment rights because it does not state that Defendant is subject to mandatory deportation but, instead, states that the effect of Defendant's conviction on his immigration status could not be predicted to a certainty. *Id.* at 25-28.

In response, the Government states that Defendant was adequately informed of the immigration consequences of his guilty plea, both in the plea agreement and at the plea hearing. [*Doc. 13* at 2 (citing *Doc. 34* at 5, filed in CR No. 13-192 WJ (Plea Agreement), and at 3-5 (citing *Doc. 67* at 7-10, filed in CR No. 13-192 WJ (Plea Hearing Transcript)]. The Government contends that the advice given to Defendant complies with the requirements of *Padilla* and that Defendant's counsel was not ineffective under *Strickland v. Washington*, 466 U.S. 688 (1984)

because his counsel's performance was not deficient and, even if it was, Defendant did not suffer prejudice from his counsel's allegedly deficient performance. [*Doc. 13* at 7-21].

### *I.  Ineffective Assistance of Counsel Claim*

In evaluating an ineffective assistance of counsel claim, an attorney's performance is measured by the two-prong standard established by the Supreme Court in *Strickland*. To prevail on an ineffective assistance claim under the *Strickland* standard, Defendant must show that (a) his attorney's performance fell below an objective standard of reasonableness, and (b) he was prejudiced by the attorney's deficient performance. *Id.* at 687. Both showings must be made to satisfy the *Strickland* standard. *Id*. To demonstrate unreasonable performance, Defendant must show that his attorney made errors so serious that his performance could not be considered "reasonable[] under prevailing professional norms." *Id.* at 688. To demonstrate prejudice, Defendant must show a reasonable probability, "sufficient to undermine confidence in the outcome," that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors. *Id.* at 694. The Court does not have to address both prongs of the *Strickland* standard if Defendant makes an insufficient showing on either one of the prongs. *Id.* at 697.

The *Strickland* analysis applies to plea proceedings. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (holding that the Strickland test applied to challenges to guilty pleas based on ineffective assistance of counsel). Before deciding whether to plead guilty, a defendant is entitled to effective assistance of competent counsel. *See Padilla*, 559 U.S. at 364. In *Padilla*, the United States Supreme Court recognized that "deportation is a particularly severe penalty" (*id.* at 365 (citation and internal quotation marks omitted)), and held that defense counsel was

ineffective by failing to advise the defendant that his guilty plea would subject him to deportation. *Id.* at 368-69. In the context of guilty pleas, to show prejudice under *Strickland*, the defendant will have to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Missouri v. Frye*, 132 S.Ct. 1399, 1409 (2012) (citation and internal quotation marks omitted); *see also United States v. Hamilton*, 510 F.3d 1209, 1216 (10th Cir. 2007).

The record in this case, including the written plea agreement and the transcript of the plea hearing, demonstrate that Defendant's counsel adequately informed Defendant of the immigration consequences of a guilty plea, and that Defendant was informed of the immigration consequences of his guilty plea by the Court. First, the plea agreement clearly and succinctly sets forth the consequences of Defendant's guilty plea by stating that "Defendant recognizes that pleading guilty may have consequences with respect to [D]efendant's immigration status." [*Doc. 34* at 5, filed in CR 13-192 WJ]. The plea agreement further provides that, in accordance with federal law, certain offenses, including the charges to which Defendant was pleading guilty, are removable offenses. *Id.* In addition, the plea agreement states that "Defendant nevertheless affirms that [D]efendant wants to plead guilty regardless of any immigration consequences that [D]efendant's plea may entail, even if the consequence is [D]efendant's automatic removal from the United States." *Id.* The plea agreement was read to Defendant in the language that he understood best and states that Defendant has "carefully discussed every part of it with [his] attorney," that Defendant understands the terms of the agreement, and that he "voluntarily agree[s] to those terms." *Id.* at 8. Defendant argues that, because the plea agreement states that "no one, including [D]efendant's attorney or the district court, can predict to a certainty the effect of

5

[D]efendant's conviction on [D]efendant's immigration status" (*id.* at 5), the plea agreement was not "clear, succinct and explicit" with regard to Defendant's immigration consequences, as required by *Padilla*. [*Doc. 1* at 10]. The Court rejects this contention because, in addition to stating earlier in the plea agreement that Defendant is pleading guilty to a removable offense, the plea agreement also states that Defendant "affirms that [he] wants to plead guilty <u>regardless</u> of any immigration consequences that [D]efendant's plea may entail, even if the consequence is [D]efendant's automatic removal from the United States." [*Doc. 34* at 5] (emphasis added). Therefore, Defendant was fully informed that he faced removal from the United States based on his guilty plea.

The language in the plea agreement is enough to demonstrate that Defendant's counsel informed Defendant of the immigration consequences of his guilty plea and that Defendant was fully informed of those consequences before entering into the plea agreement. In addition, the Court addressed this issue during the plea proceeding ensuring that Defendant understood the consequences of his guilty plea. During the plea proceeding, the Court asked Defendant if he was satisfied with the advice and representation of his counsel, if he talked about the plea agreement with his counsel, if his counsel answered all of his questions, and if he understood every term of the agreement, and Defendant answered "yes" to each question. [*Doc. 67* at 9-10, filed in CR 13-192 WJ]. Moreover, the Court asked Defendant if he understood that he could be facing immigration consequences as a result of his plea, and he stated that he understood. *Id.* at 8. Based on the clear language of the plea agreement and Defendant's testimony under oath that he understood the possible deportation consequences of pleading guilty, the Court concludes that

Defendant has failed to establish that his counsel's representation fell below an objective standard of reasonableness.

The Tenth Circuit has held that failure to meet one prong of the *Strickland* test provides sufficient grounds to recommend denial of the ineffective of assistance of counsel claim. *See Weedman v. Hartley*, No. 10-1282, 396 Fed. Appx. 556, 561, 2010 WL 3860716 (10th Cir. Oct. 5, 2010) (unpublished) (finding no need to analyze the second prong when the defendant failed to establish the first prong of the *Strickland* test). The Court, therefore, finds that Defendant's ineffective assistance of counsel claim should be denied. The Court notes that Defendant relies on the Kentucky Court of Appeals' decision following the remand of *Padilla* (*Padilla v. Commonwealth of Kentucky*, 381 S.W.3d 322 (Ky. Ct. App. 2012)), and on the Third Circuit decision in *United States v. Orocio*, 645 F.3d 630 (3d Cir. 2011), for his contention that he suffered prejudice from his counsel's alleged ineffective performance. *See* [*Doc. 1* at 14-23]. While the holdings of those cases may be relevant to the Court's analysis if the Court were to reach the second prong of *Strickland*, neither of those cases are within the Court's jurisdiction and, therefore, they are not binding on the Court. Moreover, it is important to note that the attorneys in those cases either misled the defendant regarding the immigration consequences of the defendant's conviction (*see Padilla*, 381 S.W.3d at 326 ("by providing false assurance that [defendant's] conviction would not result in his removal from this country . . . and his counsel's advice was incorrect") (discussing *Padilla*, 559 U.S. at 368)), or completely failed to inform the defendant of the immigration consequences of a guilty plea (*see Orocio*, 645 F.3d at 642 (the defendant's counsel "wholly failed to advise him of the near-certain removal consequence of pleading guilty to a controlled substance offense")). The courts in those cases,

therefore, were able to find deficient performance by counsel. Here, however, Defendant's counsel provided Defendant with accurate information about the immigration consequences of his guilty plea, as did the written plea agreement and the Court during the plea proceeding. Thus, the Court finds the holdings of those cases to be inapplicable absent a finding of deficient performance by Defendant's counsel.

## II.   Due Process Claim

Defendant next contends that the plea agreement violates his Fifth Amendment rights. [*Doc. 1* at 25-28]. Defendant contends that the language in the plea agreement regarding the immigration consequences of Defendant's guilty plea is "confusing, murky and vague, and appears to be 'boilerplate language' used in all criminal cases involving criminal aliens." *Id.* at 26. In support of this argument, Defendant relies on a Social Security case regarding the use of boilerplate language. *Id.* at 27 (citing *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004)). While this claim is not clearly stated, the Court finds that, to the extent Defendant contends that his guilty plea was taken in violation of the Fifth Amendment's due process clause because he did not understand the plea, this claim is without merit. *See United States v. Gigot*, 147 F.3d 1193, 1197 (10th Cir. 1998) (explaining that a valid guilty plea must be knowingly, intelligently, and voluntarily made). As stated above, it is clear from the record of this case that Defendant's attorney and the Court fully informed Defendant of the consequences of his guilty plea. Moreover, Defendant has provided no evidence that his counsel made misrepresentations or that the language in the plea agreement was vague or misleading. Defendant testified that he understood the immigration consequences of his plea, and the Court finds no evidence to indicate that his plea was not knowingly, intelligently, and voluntarily made. Defendant's reliance on

*Hardman* is misplaced as that case involved boilerplate language used in a credibility assessment for an application for Social Security benefits -- not a plea agreement in a criminal proceeding. 362 F.3d at 679.  The Court, therefore, finds that this claim should also be denied.

### Conclusion

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that the claims raised in Defendant's § 2255 Motion be **DENIED**, and that Case No. CIV-13-1152 be **DISMISSED with prejudice**.

_____
**LOURDES A. MARTÍNEZ
UNITED STATES MAGISTRATE JUDGE**